UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Lucretia A. Jackson,

                        Plaintiff,

      v.

Commissioner of Social Security,

                        Defendant.

**Decision and Order**

17-CV-929 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 11, 17.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

3

According to plaintiff, the ALJ committed several errors that require remand. "The ALJ made several errors in weighing the opinions of Plaintiff's physical capacity to do work. He improperly failed to give controlling weight to the opinion of Dr. Blymire, Plaintiff's treating physician; gave 'great weight' to a treatment note from Dr. Shields that was tentative and focused more on what Plaintiff's treatment options were, rather than what her functional capacities were; and gave 'some weight' to the stale opinion of a one-time consultative examiner." (Dkt. No. 11-1 at 11; Dkt. No. 18.) With respect to Dr. Blymire, plaintiff argues that he should have received more weight than other doctors whose treatment notes do not contain assessments of plaintiff's RFC. (Dkt. No. 11-1 at 13.) "In these notes Dr. Chadha and NP Cloutier do not specify any particular functional limitations. As such they are bare medical findings and giving them 'some weight' in forming an RFC was legal error." (*Id.* at 15 (citation omitted).) The same goes, according to plaintiff, for a note from Dr. Shields dated August 18, 2016 that received "great weight." Similarly, plaintiff faults the ALJ for having "assessed Dr. Balderman's opinion as worth 'some weight' for having program knowledge, but only seeing the plaintiff once and appearing to 'have accurately reflected at least some of claimant's limitations related to her hip condition but has not considered her knee condition.' Tr. 21." (*Id.* at 17.) Finally, plaintiff argues that the ALJ should not have discounted her testimony about her activities of daily living simply because she cares for an infant. (*Id.* at 19.) The Commissioner responds by pointing to inconsistencies in Dr. Blymire's opinion and by noting that "Dr. Blymire was not a specialist in rheumatology or orthopedics (Tr. 21). That fact was significant because Dr. Chadha and Nurse Cloutier, specialists in rheumatology, and Dr. Shields, a specialist in orthopedics, opined that Plaintiff had fewer limitations than reflected in Dr. Blymire's opinion (Tr. 20–22, 839–41)." (Dkt. No. 17-1 at 12.) The Commissioner argues that, contrary to cases involving non-examining consultants, "Dr. Balderman examined Plaintiff (Tr. 303–08). And

4

there is no requirement that a consultative examiner review the claimant's treatment records before issuing an opinion. Moreover, the ALJ reviewed the entire record and recognized that an X-ray and MRI subsequent to Dr. Balderman's examination revealed abnormalities in Plaintiff's right knee (Tr. 21, 507). Accordingly, the ALJ gave less weight to Dr. Balderman's opinion because he did not consider Plaintiff's knee impairment (Tr. 21). Indeed, the ALJ's RFC finding included greater limitations than contained in Dr. Balderman's opinion to account for Plaintiff's knee pain (Tr. 18)."
(*Id.* at 22.) The Commissioner also defends how the ALJ assessed inconsistencies in plaintiff's testimony:

> Indeed, "[i]t is well-established that a claimant's daily activities are an appropriate factor to consider in assessing credibility." *See Woodworth v. Berryhill*, No. 6:17-CV-06216 (MAT), 2018 WL 1989973, at *7 (W.D.N.Y. Apr. 27, 2018). Moreover, the Second Circuit has affirmed credibility findings that relied upon a claimant's daily activities without finding that they supported the ability to perform sedentary work. *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (the claimant's daily activities, including caring for his one-year-old child, undermined that he had disabling limitations). Regardless, Plaintiff's daily activities, such as caring for her infant, are not the types of activities that are done only sporadically.
>
> And even assuming *arguendo* that the ALJ erred in relying upon Plaintiff's daily activities, any error was harmless because the ALJ relied upon other factors to discredit Plaintiff's allegations. The ALJ emphasized that Plaintiff's allegations were not entirely consistent with the medical evidence of record (Tr. 21). For example, Plaintiff testified that she had disabling rheumatoid arthritis that affected all of her joints, including her knees, ankles, hands, shoulders, and elbows (Tr. 47–48). But as noted above, Dr. Chadha and Nurse Cloutier concluded that Plaintiff had no active or only mild rheumatoid arthritis (Tr. 344–45, 373). During a consultative examination, Plaintiff had full range of motion of her cervical and lumbar spines, shoulders, elbows, forearms, wrists, knees, and ankles (Tr. 305). And her joints were stable and non-tender (Tr. 305). Those findings belied Plaintiff's allegations of disabling rheumatoid arthritis.

(*Id.* at 27–28.)

The Commissioner has the better argument here. Regarding possible cognitive impairments, Dr. Santarpia examined plaintiff on June 23, 2014 and found average cognitive functioning with fair insight and judgment. [304.] Dr. Santarpia found plaintiff capable of understanding simple

5

directions and instructions and capable of performing simple tasks independently. [304.] *Cf. McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (RFC of restricted sedentary work affirmed where "substantial evidence in the record demonstrates that McIntyre can engage in 'simple, routine, low stress tasks,' notwithstanding her physical limitations and her limitations in concentration, persistence, and pace."). An examination by Dr. Laurel White and copied to Dr. Blymire on November 20, 2015 was more focused on plaintiff's pregnancy but included a finding of appropriate affect. [429; *see also* 576.] An examination on January 4, 2016 found that plaintiff had a cooperative attitude and appropriate affect, with no apparent anxiety, depression, or agitation. [440.] *Cf. Liberatore v. Colvin*, No. 5:15-CV-1483 (GTS), 2016 WL 7053443, at *9 (N.D.N.Y. Dec. 5, 2016) (RFC of restricted sedentary work affirmed where clinical records showed that plaintiff "was not in any apparent distress and had an appropriate affect and demeanor"). Elmwood Health Center reported an examination on June 4, 2016 that plaintiff had "no current emotional problems." [503.] Regarding possible physical impairments, Dr. Balderman examined plaintiff on June 23, 2014 and found moderate limitations in repetitive kneeling and climbing as well as with prolonged walking. [309.] Clinical notes following plaintiff's hip replacement in 2007 were consistent with Dr. Balderman's examination. [329–31.] According to Nurse Practitioner Cloutier, plaintiff did not have active rheumatoid arthritis as of November 2, 2014 or February 12, 2015. [347–48, 374.] *Cf. Daniels v. Astrue*, No. 07-CV-1085 DLI/RLM, 2009 WL 691934, at *4 (E.D.N.Y. Mar. 15, 2009) ("The medical evidence plaintiff submitted [including rheumatoid arthritis] does not refute the ALJ's determination that she was able to perform sedentary work as either an order clerk or surveillance monitor."). Cloutier's examination of October 29, 2014 found no restriction in spinal range of motion and some pain with hip and knee motion, though no restrictions in range of motion that would suggest that sedentary work was not possible. [363.] Dr. Chadha's examinations of

November 13, 2014 and July 13, 2015 found premature osteoarthritis but no active rheumatoid arthritis and no signs that would run contrary to an RFC of sedentary work. [349–50, 371, 377.] *Cf. Ortega v. Berryhill*, No. 16 CIV. 5999 (AJP), 2017 WL 2334228, at *21 (S.D.N.Y. May 30, 2017) ("With regard to Ortega's rheumatoid arthritis, fibromyalgia, sacroiliitis, and spinal pain, ALJ Gonzalez noted that Dr. Fkiaras's consultative examination revealed significant impairments affecting her neck, shoulders, back, hips, legs, and joints, but no evidence that suggested she would be unable to sit and perform sedentary work."). Dr. Shields examined plaintiff on August 18, 2016 and found that she should minimize stairs, squatting, and kneeling. [845.] Dr. Shields otherwise found normal mood, normal affect, and a range of motion consistent with sedentary work. [844.]

Overall, the clinical records show some pain in physical limitations pertaining to plaintiff's obesity, rheumatoid arthritis, and hip replacement. The clinical records also show reports by plaintiff of symptoms related to depression. [*E.g.*, 478.] Regardless, however, of how the Court might have assessed the clinical records in the first instance, what controls here is that the ALJ placed the most weight on medical opinions that are consistent with the overall record.

### III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 17) and denies plaintiff's cross-motion (Dkt. No. 11).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                __/s Hugh B. Scott_____
                                                Hon. Hugh B. Scott
                                                United States Magistrate Judge

DATED: June 7, 2019